1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10

11  MELISSA COTHARD and FRANK GREEN, )      3:12-cv-00270-HDM-WGC
                                     )
12                   Plaintiffs,     )
                                     )      ORDER
13  vs.                              )
                                     )
14  J.D. BENEFIT SERVICES, INC., et  )
    al.,                             )
15                                   )
                     Defendants.     )
16  _____)

17       Plaintiffs Melissa Cothard and Frank Green have filed a

18  complaint against defendants J.D. Benefit Services, Inc. ("JDB"),

19  MFJ Benefits, LLC ("MFG"), and Steven Dalinas (collectively

20  "defendants") asserting four causes of action: (1) "Restitution of

21  Plan Assets Pursuant to 29 U.S.C. § 1109(a)"; "Nevada State Law on

22  Insurance Fraud"; (3) "§510 ERISA RETALIATION, 29 U.S.C. §1140" and

23  (4) "State Law Violations."  On September 17, 2013, the court

24  issued an order (#42) denying the plaintiffs' motion for partial

25  summary judgment (#21).  Presently before the court is the

26  defendants' motion for summary judgment (#22).  The plaintiffs have

27  opposed with "Plaintiffs' Opposition to Defendants' Motion for

28

                                   1

Summary Judgment and Motion to Strike Surplusage," (#27) and the
defendants have replied (#31).

Plaintiffs Cothard and Green were employees of defendant MFG.
Defendant JDB sold insurance benefits such as short term
disability. (Def. Mot. 3.) While the plaintiffs allege that "MFG
BENEFITS LLC . . . was a successor to, and alter ego of, Defendant
BENEFIT SERVICES, INC. (Compl. at 2), defendants state that
defendants J.D. Benefit Services, Inc., and MFG Benefits, LLC,
merely "decided to work collaboratively." (Def. Mot. 3.)

Plaintiffs allege that, in January 2012, plaintiff Cothard
noticed that defendants began receiving "cancellation letters for
non-payment of premiums from Allstate Insurance Company, even
though the Circle of Life had paid its premiums to its third party
administrator, J.D. BENEFIT SERVICES, INC." (Compl. at 2.)
Plaintiffs claim that when Plaintiff Cothard requested an
explanation, "she was . . . told by defendant STEVEN DALINAS . . .
to start rolling this group into a new product, which was
TransAmerica and to roll as many of the employees as we [sic] could
so Steve [sic] didn't have to pay Allstate the balance due."
(Compl. at 3.)

MFG terminated the employment of both plaintiffs effective May
15, 2012. (Def. Opp'n at 4; Ex. 8.) Plaintiffs contend their
employment was terminated following their discovery of the
cancellation letters for nonpayment, and shortly after defendant
Dalinas received information that plaintiffs were consulting a
labor attorney. (*See* Compl. at 2-3.) Defendants assert that
plaintiffs's employment was terminated as a result of plaintiffs
being "unfit for their positions." (Def. Opp'n at 5.)

1    The plaintiffs filed their complaint (#1) in federal court on
2  May 21, 2012, and a motion for partial summary judgment (#21) on
3  February 26, 2013.  The court denied the plaintiffs' motion on
4  September 17, 2013.  Defendants filed their motion for summary
5  judgment, which is presently before the court, on March 1, 2013.

6  **I.   MOTION TO STRIKE SURPLUSAGE**

7    In their opposition to the defendants' motion for summary
8  judgment, plaintiffs "move to strike all Defendants' exhibits
9  submitted in support of the motion for summary judgment if the
10 exhibit or page and line number of testimony is not specifically
11 referenced in the Defendants' moving papers."  (P. Opp'n 4.)  The
12 plaintiffs assert that "it appears Defendants' counsel simply
13 attached her entire file as exhibits to this motion," and that the
14 plaintiffs' counsel "cannot respond to such unfocused clutter."
15 (*Id.*)  The plaintiffs also "object to the Defendants' declarations
16 on the basis that many of the statements lack foundation, and are
17 simply generalized lay opinions rather than facts."  (*Id.*)

18    The Court first examines this "Motion to Strike Surplusage,"
19 as the court's ruling on that motion affects the evidence available
20 to the court in ruling on the defendants' motion for summary
21 judgment.

22 **Standard**

23    Under Rule 56(c)(1) of the Federal Rules of Civil Procedure,

24    [a] party asserting that a fact cannot be or is genuinely
      disputed must support the assertion by:
25         (A) citing to particular parts of materials in the
           record, including depositions, documents, electronically
26         stored information, affidavits or declarations,
           stipulations (including those made for purposes of the
27         motion only), admissions, interrogatory answers, or other
           materials; or
28

3

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. § 56(c)(1).  However, under Rule 56(c)(3), [t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. § 56(c)(3).  Furthermore, under Rule 56(c)(4),

> [a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. § 56(c)(4).

Motions to strike under the Federal Rules of Civil Procedure are governed by Rule 12(f), which states:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. § 12(f).  "Pleadings" are defined by Rule 7(a), which designates the following as the "only . . . pleadings allowed."

> (1) a complaint;
> (2) an answer to a complaint;
> (3) an answer to a counterclaim designated as a counterclaim;
> (4) an answer to a crossclaim;
> (5) a third-party complaint;
> (6) an answer to a third-party complaint; and
> (7) if the court orders one, a reply to an answer.

Fed. R. Civ. P. § 7(a).

**Analysis**

While it is true that not every page of the exhibits defendants attached to their motion for summary judgment is cited to in their motion, the defendants do still provide citations to

4

specific portions of the attached exhibits in many sections of their motion in accordance with Rule 56(c)(1).  *See, e.g.*, Def. Mot. 3-5.; *see* Fed. R. Civ. P. § 56(c)(1).  Additionally, as discussed above, the court when evaluating a motion for summary judgment is not required to, but may, at its discretion, consider materials in the record that are not cited to in the motion.  *See* Fed. R. Civ. P. § 56(c)(3).  Thus, as a matter of law there is no reason why this court should "strike" the portions of the defendants' exhibits not specifically cited to in the motion for summary judgment.

Moreover, while the plaintiffs "object" to the defendants' attached declarations, they do not suggest that these declarations are made without personal knowledge, contain facts that would be inadmissible evidence, or do not show that the declarant is competent to testify on the matters stated.  The plaintiffs therefore not do not allege that the defendants' declarations violate Rule 56(c)(4), which governs declarations used in support of a motion for summary judgment.  *See* Fed. R. Civ. P. § 56(c)(4); Def. Opp'n 4.  Accordingly, there is no reason for this court to "strike" or decline to consider these declarations.

Finally, Rule 12(f), which controls motions to strike, makes clear that motions to strike may only be made to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. § 12(f).  As discussed above, Rule 7(a) makes clear that motions are not pleadings.  *See* Fed. R. Civ. P. § 7(a).  The plaintiffs' motion to "strike surplusage" from the defendants' motion for summary

judgment is therefore improper under the Federal Rules of Civil Procedure.

For all of the foregoing reasons, the plaintiffs' motion to strike surplusage is denied.

**II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT:**

The defendants have moved for summary judgment on all claims. The court now considers this motion.

**Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

6

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).  "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Insurance Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).  Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Finally, if the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (holding that "the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically

referred to and facts therein set forth in the motion papers"). The district court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)).  "[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts.  But if the nonmoving party fails to discharge that burden-for example by remaining silent-its opportunity is waived and its case wagered." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

**Analysis**

*Plaintiffs' First Claim:  "Restitution of Plan Assets Pursuant to 29 U.S.C. § 1109(a)"*

     The plaintiffs' first claim for relief hinges on the argument that: (1) the insurance plans at issue were ERISA plans; (2) the defendants breached their fiduciary duties with regard to these plans; (3) defendants are "liable to make good . . . any such losses to the plan[s] resulting from . . . such breach" under 29 U.S.C. § 1109(a); (4) plaintiffs were co-fiduciaries of the plans pursuant to 29 U.S.C. § 1002(21)(A); (5) as co-fiduciaries the plaintiffs may now be held liable for the defendants' breach under 29 U.S.C. § 1105; and (6) because they may be held liable, plaintiffs are entitled to "a full forensic accounting of all Defendants, by a reputable third party Certified Public Account [sic] appointed by the Court, and restitution based upon the findings of such audit, together with interests, costs, and

8

1   attorneys [sic] fees." (Compl. 5-6.)   As a threshold inquiry, the

2   court must first examine whether or not the plans at issue were

3   actually ERISA plans.

4         ERISA governs "employee welfare benefit plans," and defines

5   these plans expansively to include:

6         any plan, fund, or program which was heretofore or is
          hereafter established or maintained by an employer or by an
7         employee organization, or by both, to the extent that such
          plan, fund, or program was established or is maintained for
8         the purpose of providing for its participants or their
          beneficiaries, through the purchase of insurance or otherwise,
9         (A) medical, surgical, or hospital care or benefits, or
          benefits in the event of sickness, accident, disability, death
10        or unemployment, or vacation benefits, apprenticeship or other
          training programs, or day care centers, scholarship funds, or
11        prepaid legal services, or (B) any benefit described in
          section 186(c) of this title (other than pensions on
12        retirement or death, and insurance to provide such pensions).

13  29 U.S.C.A. § 1002.  However, the Secretary of Labor has issued a

14  regulation creating what has become known as the ERISA "safe

15  harbor."  A group insurance plan offered to employees falls within

16  the safe harbor regulation and is exempt from ERISA coverage when:

17        (1) No contributions are made by an employer or employee
          organization;
18        (2) Participation the program is completely voluntary for
          employees or members;
19        (3) The sole functions of the employer or employee
          organization with respect to the program are, without
20        endorsing the program, to permit the insurer to publicize the
          program to employees or members, to collect premiums through
21        payroll deductions or dues checkoffs and to remit them to the
          insurer; and
22        (4) The employer or employee organization receives no
          consideration in the form of cash or otherwise in connection
23        with the program, other than reasonable compensation,
          excluding any profit, for administrative services actually
24        rendered in connection with payroll deductions or dues
          checkoffs.
25
    29 C.F.R. § 2510.3-1.  The Ninth Circuit has made clear that a
26
    group insurance plan cannot be excluded from ERISA coverage unless
27
    all four elements of the safe harbor provision are satisfied;
28

9

failure to satisfy any one of the elements qualifies a group

insurance plan as an ERISA employee welfare benefit plan.  *See*

*Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th

Cir. 2000).

Defendants in their motion for summary judgment argue that the

insurance plans at issue, for which JDB did third party billing,

fall within the safe harbor regulation and are therefore exempt

from ERISA coverage.  (*See* Def. Mot. 8-9.)  The defendants allege

that

> all of the insurance plans at issue involved 1) no
> contributions made by an employer or employee organization;
> instead they were all 100% individual employee paid; 2)
> participation was completely voluntary; 3) the sole function
> of the employer was to permit JDB to publicize its services
> and meet with the employees and to collect premiums; and 4)
> The employer received no consideration in the form of case
> otherwise for administrative services rendered in connection
> with payroll deductions.

(D. Mot. 9.)  These factual assertions, if true, would clearly put

the insurance plans at issue within the ERISA safe harbor

regulation.  *See* 29 C.F.R. § 2510.3-1.  To support this claims, the

defendants have attached a declaration from defendant Dalinas and

testimony from defendant Dalinas' deposition testimony, among other

materials.  (*See* Def. Mot. 22 ("Exhibit List").)

In their opposition to the defendants' motion, the plaintiffs

argue that at least some of the money they claim the defendants

embezzled came from ERISA funds.  The plaintiffs allege that the

insurance plans at issue do not fall within the ERISA safe harbor

regulation because some of the plans "fail the first criteria

[sic]" and "at least three clients . . . if not all, fail the third

criteria [sic]."  (P. Opp'n 11-12.)  Plaintiffs provide arguments

and information, discussed below, related to the alleged failure of

10

the insurance plans at issue to meet the first and third elements of the safe harbor regulation.  (See P. Opp'n 6-11.)  However, the plaintiffs are silent in their opposition as to whether or not the insurance plans satisfy the second and fourth elements of the safe harbor regulation, and do not dispute in any way that, as set forth by the defendants, "participation [in the plans] was completely voluntary" and "[t]he employer[s, JDB's clients,] received no consideration in the form of case otherwise for administrative services rendered in connection with payroll deductions."  (D. Mot. 9; *see generally* P. Opp'n.)

Rule 56(e)(2) of the Federal Rules of Civil Procedure states that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. § 56(e)(2); *see also Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013).  Pursuant to Rule 56(e)(2), because the plaintiffs do not contest in their opposition the facts set forth by the defendants demonstrating that the plans satisfy the second and fourth elements of the safe harbor regulation, the court will consider those facts undisputed.  Accordingly, the court determines that the plans do satisfy the second and fourth elements of the safe harbor provision.

With regard to the first element of the safe harbor regulation, that "[n]o contributions are made by an employer or employee organization," the defendants claim in their motion for summary judgment that the plans at issue "were all 100% individual employee paid."  29 C.F.R. § 2510.3-1; D. Mot. 9.  In their

opposition, to support their argument that "some of the plans fail

the first criteria [sic]," plaintiffs claim that

> Employers like Art Wilson paid for the group medical premiums
> with employee contributions in one combined check.  Other
> employers, like the Nevada Museum of Art, paid for employees
> even though these were supposedly voluntary supplemental
> plans.  Thus, the single check that Defendants deposited into
> a single, commingled account contained ERISA plan
> contributions.

(P. Opp'n 11.)  Plaintiffs allege that certain JDB clients

regularly sent the defendants combined checks containing funds for

both employee-paid insurance coverage and insurance coverage that

included employer contributions, and that defendants deposited

those combined checks into a single account, which was the account

from which defendant Dalinas allegedly embezzled money.  (See P.

Opp'n 8, 11.)  Thus, the plaintiffs argue, ERISA funds were

compromised.  (*Id.*)

     In support of their arguments, plaintiffs provide a

declaration from plaintiff Cothard and four exhibits.  The only

portion of plaintiff Cothard's declaration relevant to the first

provision of the ERISA safe harbor regulation is the statement that

> Art Wilson Company sent its check for both its basic medical
> plan and its supplemental or so-called voluntary insurance
> plans in one check made payable to JD Benefits, which JD
> Benefits deposited into its general account and use [sic] to
> pay personal expenses of Steve Dalinas."[1]

---

     [1]  While group medical insurance plans often include employer
contributions, they do not always contain employer contributions.  The
plaintiffs argue in part that the combination of client payments from both
group health or medical insurance and other voluntary insurance programs
into one account that was breached by defendant Dalinas is in and of itself
evidence of wrongdoing under the ERISA statutes, because all group medical
insurance plans are ERISA plans.  The plaintiffs' opposition, after quoting
the exact section of plaintiff Cothard's deposition quoted preceding this
footnote, states that "[g]roup medical insurance is not exempted from ERISA
as a voluntary plan under 29 C.F.R. § 2510.3-1(j)." (internal quotation
marks ommitted.  (P. Opp'n 8.)
     This argument is without merit.  The plaintiffs cite to no authority

1   (Cothard Dec. 3.)  As exhibits, the plaintiffs provide deposition

2   testimony from the plaintiffs, Melissa Cothard and Frank Green, as

3   well as from defendant Dalinas.  (*See* P Opp'n Ex. A, B, C.)

4   However, none of the attached testimony corroborates the

5   plaintiffs' arguments regarding the first element of the ERISA safe

6   harbor provision.  (*See generally id.*)

7        As their fourth and final exhibit, plaintiffs attach a

8   document from "freeERISA.com" titled "Annual Return/Report of

9   Employee Benefit Plan."  (*See id.* Ex. D.)  In their opposition,

10  plaintiffs reference the form, stating

11          [f]or some reason, Mr. Dalinas refused to acknowledge that he
            or JD Benefits ever submitted a government IRS form 5500, even
12          though he signed one for JD Benefits in 2009 and 20011, a copy
            of which is attached to the declaration of Mark R Thierman as
13          Exibit D.

14  (P. Opp'n 6 n.5.)  The form lists defendant Dalinas' name as the

15  "plan administrator," "employer/plan sponsor," and "plan

16  administrator."  (P. Opp'n Ex. D.)  The "Name of plan" is listed as

17  "J.D. Benefit Services, Inc. 401(k) Profit Sharing Plan."  (*Id.*)

18       However, the plaintiffs have offered no information whatsoever

19  about the significance of this form or how it reinforces their

20  claims.  (*See generally* P. Opp'n.)  The names of the clients the

21  plaintiffs have discussed in their opposition and in their

22  complaint are listed nowhere on the form.  (*See* P. Opp'n Ex. D.)

23

24  ———————————

25  demonstrating that all group health insurance plans are ERISA plans by
    definition, and Ninth Circuit case law actually indicates to the contrary.
26  *See, e.g.*, *Qualls ex rel. Qualls v. Blue Cross of California, Inc.*, 22 F.3d
    839, 842-45. (9th Cir. 1994) (undertaking an analysis of whether or not a
27  group health insurance plan is exempt from ERISA; the court does not assume
    the plan is not exempt simply because it is a health insurance plan, but
28  instead applies the safe harbor provisions individually, reaching the
    eventual conclusion that the plan is not exempt).

1  The plaintiffs have failed to show how this form supports their

2  arguments.

3       With regard to the third element of the safe harbor provision,

4  that

5       [t]he sole functions of the employer or employee organization
        with respect to the program are, without endorsing the
6       program, to permit the insurer to publicize the program to
        employees or members, to collect premiums through payroll
7       deductions or dues checkoffs and to remit them to the insurer,

8  the defendants posit that "the sole function of the employer[s with

9  regard to the insurance plans at issue] was to permit JDB to

10 publicize its services and meet with the employees and to collect

11 premiums."  29 C.F.R. § 2510.3-1; D. Mot. 9.

12      The plaintiffs argue in their opposition that the insurance

13 plans of "at least three clients . . . if not all, fail the third

14 criteria [sic] because the employer designed the plans, and, in

15 many cases, the employer administered the plan."  (P. Opp'n 11.)

16 The plaintiffs claim that after defendant Dalinas embezzled funds,

17 "Plaintiff Cothard was told to tell the employers that they should

18 switch to a new carrier to avoid cancellation."  (*Id.*)  The

19 plaintiffs' opposition quotes extensively from plaintiff Cothard's

20 declaration, in which she alleges that she at times during her

21 employment at JDB helped work with client employers to redesign

22 some of the insurance plans at issue, answered various questions

23 from employee plan participants, and assisted employee plan

24 participants with insurance claims.  (*See* P. Opp'n 8-11; Cothard

25 Dec. 2-3.)  The only additional piece of evidentiary support for

26 these claims plaintiffs have offered appears to be a few

27

28

1  additional, similar statements made by plaintiff Cothard in her

2  deposition.  (*See* P. Opp'n Ex. B 54.[2])

3       In their reply, defendants deny entirely the plaintiffs'

4  allegations regarding the lack of ERISA exemption for the plans at

5  issue.  The defendants assert that

6       [t]he self-serving Affidavit of Melissa Cothard truthfully
        evidences how little she ever knew or understood about the
7       business of JDB or MFG . . . What decisions employers were
        involved in or made was not something Cothard was ever privy
8       to.  How accounts were paid and where those funds were
        deposited was not something Cothard was ever involved in at
9       MFG."

10 (Def. Reply 8.)

11      In a motion for summary judgment, once the moving party

12 presents evidence that would call for judgment as a matter of law

13 at trial if left uncontroverted, the respondent must show by

14 specific facts the existence of a genuine issue for trial.

15 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In this

16 case, the defendants have presented declarations and deposition

17 testimony indicating that the insurance plans at issue fall within

18 the ERISA safe harbor provision.

19      Since the defendants have discharged their initial burden with

20 their motion and supporting evidence, the burden shifts to the

21 plaintiffs, the nonmoving party, to demonstrate the existence of a

22 genuine issue for trial be showing "specific facts."  *Id.*  The

23 plaintiffs must do more than present opposing allegations;

24 conclusory allegations that are unsupported by factual data cannot

25 defeat a motion for summary judgment.  *Taylor v. List*, 880 F.2d

26 1040, 1045 (9th Cir. 1989).  Additionally, "'conclusory, self-

27

28      [2]  The cited page number is the page number of the deposition,
        not the exhibit.

serving affidavit[s], lacking in detailed facts and any supporting evidence, [are] insufficient to create a genuine issue of material fact'" (*Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9 th Cir. 2007) (quoting *Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1158, 1171 (9th Cir. 1997))), and "[u]ncorroborated and self-serving testimony," without more, will not create a genuine issue of material fact precluding summary judgment *(Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cr. 2002)).

The declaration and testimony presented by the plaintiffs are indeed "unsupported by factual data," "uncorroborated and self-serving," and "lacking in any supporting evidence."  One party's assertions in deposition testimony and sworn declarations can under some circumstances be enough to defeat a summary judgment motion. *See Robins v. Centinela State Prison*, 19 Fed. Appx. 549, 550 (9th Cir. 2001).  However, the case at hand is not one in which "it is unremarkable that [plaintiffs] could not otherwise corroborate" the contents of their declarations and deposition testimony.  *S.E.C. v Phan*, 500 F.3d 895, 910 (9th Cir. 2007) (holding that the district court could not disregard uncorroborated declarations based on the declarants' own actions, noting the difficulty of ever corroborating the "personal conversations" discussed in the declarations).  The instant action turns not on personal conversations, but on organizational practices that involved multiple players and a significant amount of paperwork. (*See generally* Cothard Dec.)  Yet, despite months of discovery, plaintiffs have not been produced a single piece of documentary evidence or even a single statement from anyone other than plaintiff Cothard that the defendants' practices with regard to the

insurance plans in question rendered the plans covered by ERISA. (*See generally* P. Opp'n.)

Accordingly, even when viewing the evidence as required "'in the light most favorable to the party opposing the motion,'" the court finds that plaintiffs have failed to show that there is a genuine issue of material fact as to whether the insurance plans at issue are covered by ERISA. *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)). The plaintiffs have not carried their burden of rebutting the defendants' evidence that the plans are exempt from ERISA coverage with specific facts and significantly probative evidence showing the existence of a genuine issue for trial as to whether the plans are in fact covered. *See Anderson*, 477 U.S. at 249-250; *see also* Fed. R. Civ. P. § 56(e).

As discussed above, the court considers it undisputed that the insurance plans at issue meet elements two and four of the ERISA safe harbor regulation. *See* 29 C.F.R. § 2510.3-1; *supra* discussion at 10-11. Because the plaintiffs have failed to show that there is a genuine issue of material fact with regard to whether the plans satisfy elements one and three of the regulation, the court finds as a matter of law that the plans at issue do satisfy those elements, and therefore do fall within the safe harbor provision. *See id.* The plans are therefore exempt from ERISA coverage. *See id.*

Given that the insurance plans at issue are exempt from ERISA coverage, plaintiffs cannot as a matter of law prevail on their first claim for relief. Summary judgment is therefore granted to the defendants with regard to the plaintiffs' first

17

1  claim for relief, and the first claim of relief is dismissed with

2  prejudice.

3  *Plaintiffs' Third Claim:  "§510 ERISA RETALIATION, 29 U.S.C. §1140"*

4       The plaintiffs' third claim, "§510 ERISA RETALIATION," is

5  contingent on the benefit plans at issue actually being ERISA

6  plans.  However, the court has already found that there is no

7  genuine issue of material fact that the insurance plans at issue

8  were actually exempt from ERISA coverage by the ERISA safe harbor

9  regulation, 29 C.F.R. § 2510.3-1.  (*See supra* discussion at 16-17.)

10  The defendants are therefore granted summary judgment as a matter

11  of law on the plaintiffs' third claim, and the plaintiffs' third

12  claim is dismissed with prejudice.

13  *Plaintiffs' Second and Fourth Claims:  "Nevada State Law on*

14  *Insurance Fraud"* and *"State Law Violations"*

15       Having granted summary judgment and dismissed the plaintiffs'

16  first and third claims, which are the plaintiffs' only federal

17  claims, this court declines to exercise supplemental jurisdiction

18  over the plaintiffs' second and fourth claims for relief, which are

19  both state law claims.  A district court need not actuate

20  supplemental jurisdiction if it has dismissed all claims over which

21  it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *see Moore v.*

22  *Kayport Package Express, Inc.*, 885 F.2d 531, 537 (9th Cir. 1989).

23  Thus, the state supplemental claims shall be dismissed without

24  prejudice.

25  **CONCLUSION**

26       In accordance with the foregoing, the defendants' motion for

27  summary judgment (#22) is **GRANTED** as to the plaintiffs' first and

28  third claims for relief, and those claims are dismissed with

prejudice.

The court declines to consider the plaintiffs' second and fourth claims for relief for the reasons set forth above, and dismisses those claims without prejudice.

**IT IS SO ORDERED.**

DATED: This 15th day of January, 2014.

_____
UNITED STATES DISTRICT JUDGE

19